IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES SMITH WHITLOCK, III, )
)
        Plaintiff, )
) 1:10CV958
      v. )
)
JARED GREENLEE (in his )
individual capacity), )
)
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, *pro se*, filed a Complaint against Defendant Jared Greenlee ("Defendant"), a Chapel Hill, NC police officer, on or about November 15, 2010, alleging civil rights violations pursuant to 42 U.S.C. § 1983 and several state law claims as a result of an alleged unreasonable search and seizure. Before the court is Defendant's motion for summary judgment (Docket Entry 45) pursuant to Federal Rule of Civil Procedure 56. Plaintiff filed a response in opposition to this motion (Docket Entry 52). A hearing was held on this motion on November 20, 2013. For the following reasons, it is recommended that the Court deny in part and grant in part Defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND

In his amended complaint, Plaintiff alleges that Defendant conducted an unreasonable search of his person, an unreasonable search of his vehicle, and an unreasonable seizure of his handgun in violation of the Fourth Amendment of the U.S. Constitution and in violation of the common law torts of false imprisonment and trespass to personal property. (*See generally* Am. Compl. (hereinafter "Compl."), Docket Entry 39.) In

support of his Complaint, Plaintiff alleges the following facts. On November 16, 2007, Plaintiff drove to Carrboro, North Carolina at approximately 10:00 p.m. to investigate an entity known as Starpoint for a "separate matter involving a lawsuit" against the company. (*Id.* ¶ 12.) Prior to the investigation, Plaintiff ate dinner in Chapel Hill, North Carolina. (*Id.* ¶ 14.) After completing his investigation of Starpoint at approximately 2:00 a.m. on November 17, 2007, Plaintiff alleges that he "began to feel extremely tired and decided to spend the night in Chapel Hill, rather than drive back to Raleigh." (*Id.* ¶ 16.) Plaintiff parked his four-door BMW vehicle on the 100 block of East Franklin Street in Chapel Hill and fell asleep in the backseat. (*Id.*)

At approximately 4:30 a.m. on November 17, 2007, Plaintiff was awakened by a loud knocking on the window by Defendant. (*Id.* ¶ 17.) Upon request, Plaintiff presented his driver's license to Defendant. (*Id.* ¶¶ 17-18.) Plaintiff alleges that he also informed Defendant that he had a permit to carry a concealed weapon and that "he had a pistol." (*Id.* ¶ 18.) Thereafter, Defendant asked Plaintiff to exit the vehicle, whereupon Defendant instructed another officer (who had just arrived on the scene) to handcuff and frisk Plaintiff. (*Id.* ¶¶ 18, 20.) In his affidavit, Plaintiff states that he told Defendant that the pistol was located in the trunk of his vehicle. (Pl. Aff. ¶ 8, Docket Entry 53.) Defendant then asked Plaintiff if he had been drinking or using drugs and Plaintiff stated that "he had not consumed any alcohol or drugs." (Compl. ¶ 24.)

Plaintiff alleges that, without his consent, Defendant and other officers on the scene searched the passenger compartment of the vehicle and the trunk for approximately one hour. (*Id.* ¶¶ 34-36, 39.) Defendant retrieved the pistol from Plaintiff's vehicle. (*Id.* ¶ 27.)

2

Defendant told Plaintiff that "he was keeping Plaintiff's pistol and that Plaintiff could retrieve his pistol from the Chapel Hill Police Department on the following Monday, November 19, 20[07]." (*Id.* ¶ 44.) Plaintiff alleges that Defendant did not explain why he was keeping Plaintiff's pistol. (*Id.* ¶ 45.)

Approximately 6:50 p.m. that evening (November 17, 2007), Plaintiff spoke with Defendant, and Defendant stated again when and how Plaintiff could retrieve his gun. (*Id.* ¶ 47.) Plaintiff alleges that Defendant informed him that no charges would be filed against him. (*Id.*) On Monday, November 19, 2007, Plaintiff went to the Chapel Hill Police Department, and his pistol was returned to him. (*Id.* ¶ 49.) Plaintiff asserts that on November 26, 2007, Magistrate John Stokes issued a warrant for Plaintiff's arrest for possession of a pistol while consuming alcohol or having previously consumed alcohol on November 17, 2007. (*Id.* ¶ 50.) Officers of the Raleigh Police Department arrested Plaintiff on December 29, 2007. (*Id.* ¶ 53.) Plaintiff was detained approximately six hours before being released on a secured bond. (*Id.* ¶¶ 54-55.) The charge against Plaintiff was dismissed on February 18, 2008, after Plaintiff's agreement to destroy the gun and to refrain from applying for a concealed weapon permit for six months. (*Id.* ¶ 57; *see also* Def. Aff. ¶ 19; Pl.'s Criminal Court File at 13-14, Docket Entry 46-4.)

Plaintiff's complaint further alleges facts about his history with the Chapel Hill Police Department to establish Plaintiff's claim that Defendant's actions were retaliatory. (*Id.* ¶¶ 58-65.) The Chapel Hill Police Department hired Plaintiff as an officer in 2003. (*Id.* ¶ 60.) Plaintiff alleges that he reported the inappropriate behavior of fellow officers to Chief Gregg Jarvis ("Chief Jarvis") and subsequently resigned because Chief Jarvis told Plaintiff, "[he]

3

should not report other police officers and that the police department was a 'brotherhood'." (*Id.* ¶ 61.) Plaintiff thereafter resigned from the Chapel Hill Police Department in fear of retaliatory actions against him. (*Id.*) Plaintiff alleges that another employee of the Chapel Hill Police Department informed Defendant about Plaintiff's history with the department. (*Id.* ¶ 62.) After becoming aware of this information, Plaintiff asserts that Defendant "was instructed, encouraged, or decided on his own to use the events of November 17, 2007 as a pretense for retaliating against [him]." (*Id.* ¶ 63.)

## II. DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-

4

finder to return a verdict for that party. *Anderson*, 477 U.S. at 250; *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

A self-serving affidavit, however, will not be sufficient to defeat a motion for summary judgment. *Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000). "Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions." *Jones v. Mullins Police Dep't*, CIV. A. 9:07-0497-JFA-GCF, 2008 WL 269503 at *4 (D.S.C. Jan. 29, 2008) *aff'd*, 355 F. App'x 742 (4th Cir. 2009). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Accordingly, in considering Defendant's motion for summary judgment, the court must view the evidence and all justifiable inferences in favor of Plaintiff.

1. Unlawful Arrest

Plaintiff claims that Defendant falsely arrested him (or initiated a false arrest against him) in violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. (Compl. ¶ 69.) Defendant moves for summary judgment on grounds that probable cause existed to arrest Plaintiff, or at the very least, Defendant is entitled to prevail based upon qualified immunity. (*See* Def.'s Mem. in Support of Mot. for Summ. J. at 14, Docket Entry 48.) Plaintiff's unlawful arrest claim against Defendant rests heavily on whether probable cause existed to obtain an arrest warrant. To reach this probable cause determination, the court must "examine the totality of the circumstances known to the officer at the time of arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (citing *United*

*States v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995)). "[W]here a law enforcement officer acts pursuant to a warrant, the critical question is whether the officer *could have reasonably thought* there was probable cause to seek the warrant." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (emphasis added).

In analyzing probable cause, the Supreme Court has stated:

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. See *ibid.; Brinegar*, 338 U.S., at 175, 69 S.Ct. 1302. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," *ibid.* (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Illinois v. Gates,* we noted:
>
>> "As early as *Locke v. United States,* 7 Cranch 339, 348, 3 L.Ed. 364 (1813), Chief Justice Marshall observed, in a closely related context: '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion.' More recently, we said that 'the *quanta* . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar,* 338 U.S., at 173, 69 S.Ct. 1302. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." 462 U.S., at 235, 103 S.Ct. 2317.
>
> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause, *Ornelas, supra,* at 696, 116 S.Ct. 1657.

*Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003).

Plaintiff's Complaint depicts his rendition of the events leading up to the arrest. In his affidavit, Defendant explains his reasons for believing probable cause existed to seek an arrest warrant against Plaintiff in violation of N.C. Gen. Stat. § 14-415.21(B):

> 4. On November 17, 2007, while driving west on East Franklin Street in Chapel Hill, North Carolina, at or around 4:29 a.m., I observed a male on Franklin Street. He was wearing a ski mask type hat and was leaning against a black BMW near Sutton's Drug store on Franklin Street. It was cold outside and very late. Not many people were out at the time – even on Franklin Street. The situation appeared suspicious to me so I decided to turn my patrol car around and investigate further. . . .
>
> 5. By the time I turned my patrol car around and returned to plaintiff's car, plaintiff was sitting in the backseat of the vehicle and had removed his hat. In order to investigate, I stopped my vehicle, got out, and approached plaintiff who, again, was sitting in the rear seat of his BMW which was parked on Franklin Street. . . .
>
> 6. Upon making contact with plaintiff, I asked him what he was doing. Plaintiff informed me that he had had too much to drink and was going to sleep in the backseat of his car until he felt he was okay to drive home. As I talked with and observed plaintiff, I noticed a moderate smell of alcohol on and around him. He also, based upon my observations, experience, and training, exhibited slow and slurred speech. It was my opinion at the time that plaintiff had consumed alcohol and was under the influence of alcohol at the time . . . .
>
> 7. During my initial conversation with plaintiff, he identified himself and provided his driver's license to me. As I was walking back to my patrol car to verify his license and tag information, plaintiff informed me that he had a gun in his car and that he had a carry and conceal permit for the weapon. This was the first time that plaintiff mentioned that he had a gun. He did not inform me of such when we first started talking. After informing me that he was in possession of a gun, plaintiff told me that the gun was in the rear seat of his car.
>
> . . .
>
> 9. As I was checking plaintiff's information, . . . we heard via radio that a report had just been called into the campus police department of the University of North Carolina at Chapel Hill wherein a concerned citizen

7

reported that they had just seen a man on Franklin Street in or near a black BMW holding a gun.

10. Based upon all of the above noted circumstances, a decision was made to conduct a weapons frisk of plaintiff and his vehicle. For safety reasons, we wanted to locate and secure his weapon.

11. Plaintiff was briefly handcuffed and frisked while the officers looked in the back rear seat of plaintiff's vehicle where plaintiff had indicated that his gun was located. The gun was not initially located in this area but the officers did locate loaded magazines. Based on plaintiff's acknowledgement of a weapon and the location of the loaded magazines, we developed probable cause that the weapon could be in the trunk of the vehicle and continued our efforts to locate it. To the best of my recollection, the gun was located in the trunk which could be accessed through the rear seat of the car. A 9 mm Glock handgun was retrieved.

. . . .

16. I decided to arrest plaintiff for the concealed gun permit violation on or about November 26, 2007 . . . . While I had considered giving plaintiff a break, I learned when I returned to the day shift at the police department that plaintiff was known to the police department and that there had been a prior issue with plaintiff and his gun . . . . I believe I was informed as such by my Captain at the time. While I was told that plaintiff had been employed with Chapel Hill as a police recruit, I was not informed of any details regarding his employment or the reasons why he was no longer employed. The discussions that I had with my supervisor involved only the issue with plaintiff's gun . . . . I, alone, made the decision to charge plaintiff. I was not ordered or instructed to charge him by anyone at Chapel Hill.

17. On November 26, 2007, a neutral Magistrate, John Stokes, issued a warrant for plaintiff's arrest for a violation of conceal handgun permit (carrying a concealed handgun while consuming or having previously consumed and having alcohol in his system). . . . Plaintiff was parked on Franklin Street in Chapel Hill, North Carolina, after 4:00 a.m. It was my opinion at said time, based upon my observations of plaintiff and training and experience, that plaintiff had consumed alcohol at said time. Plaintiff acknowledged that he had been drinking. He stated that he was going to sleep in his car until he felt that he could drive home. Even if plaintiff had not made such statements, it would have still appeared to me that he had been drinking based upon all of the circumstances and my observations that evening. . . .

(Def. Aff. ¶¶ 5-17, Docket Entry 46.)

8

Based upon review of the evidence in the record, and taken all facts in the light most favorable to Plaintiff, the court finds that there is a genuine issue as to whether Defendant had probable cause to seek an arrest warrant against Plaintiff in violation of N.C. Gen. Stat. Ann. § 14-415.21(B). This statute states that "[a] person who violates the provisions of [Article 54B] other than as set forth in subsection (a) or (a1) of this section is guilty of a Class 2 misdemeanor." N.C. Gen. Stat. Ann. § 14-415.21(B). Plaintiff was charged with violating N.C. Gen. Stat. Ann. § 14-415.11(c2):

> It shall be unlawful for a person, with or without a permit, to carry a concealed handgun while consuming alcohol or at any time while the person has remaining in the person's body any alcohol or in the person's blood a controlled substance previously consumed, but a person does not violate this condition if a controlled substance in the person's blood was lawfully obtained and taken in therapeutically appropriate amounts or if the person is on the person's own property.

N.C. Gen. Stat. Ann. § 14-415.11(c2). As to the essential element regarding consumption of alcohol, there is a genuine issue of material fact as to whether there was probable cause to believe that Plaintiff had consumed alcohol. In his affidavit, Defendant states that Plaintiff informed him that he had too much to drink and was going to sleep in his backseat until it was okay for him to drive home. (Def. Aff. ¶ 6.) Defendant contends that he noticed a "moderate smell of alcohol on and around [Plaintiff]." *Id.* Based upon Defendant's observations, experience, and training, Defendant concluded that Plaintiff had consumed alcohol. *Id.* Defendant indicated that he did not conduct a field sobriety test on Plaintiff because he was not driving at the time. *Id.*

According to Plaintiff, however, he did not smell of alcohol nor had he consumed alcohol. He did not slur his speech, and to the extent his speech was slow, it was because he

9

had not taken his ADHD medication recently. (Pl. Aff. ¶¶ 9, 16, Docket Entry 53.) Taking the facts in the light most favorable to Plaintiff, it appears that there is a genuine issue of material fact as to whether there was probable cause to believe Plaintiff had consumed alcohol or had previously consumed alcohol at the time the incident occurred. Consumption of alcohol is an element of the crime charged. *See* N.C. Gen. Stat. Ann. §14-415.21(B). Plaintiff disputes all pertinent facts, except that his speech may have been slow and he was tired. (Pl. Aff. ¶¶ 6, 9.) A jury could find in favor of either party on this issue affecting the outcome of Plaintiff's unlawful arrest claim.

2. Unlawful Search

Plaintiff also asserts that Defendant searched the trunk of his vehicle in violation of the Fourth Amendment. With few exceptions, the Fourth Amendment requires officers to obtain a warrant prior to searching a vehicle. One such exception is the "protective search". During a stop of a vehicle, if upon reasonable belief that "the suspect is dangerous" and "may gain immediate control of any weapons," a law enforcement officer may conduct a protective search of the passenger compartment of a vehicle without a warrant, "[l]imited to those areas in which a weapon may be placed or hidden." *United States v. Griffin*, 589 F.3d 148, 153 (4th Cir. 2009) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *see also United States v. Holmes*, 376 F.3d 270, 276 (4th Cir. 2004). "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Long*, 463 U.S. 1032, 1050 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

10

Based upon Defendant's reasonable suspicion of criminal activity, the initial brief detainment[1] and search of the passenger compartment of the vehicle was justified. Defendant noticed Plaintiff wearing a ski mask and leaning against a vehicle at approximately 4:30 a.m. Plaintiff informed Defendant after he approached the vehicle that Plaintiff had a gun in the trunk. At or about the same time, a report to campus police indicated that a man matching Plaintiff's description had a gun and was wearing a black ski mask standing next to a black BMW.[2] Thus, the initial encounter with Plaintiff was lawful.

Defendant asserts that he conducted a weapon frisk of Plaintiff and the vehicle for safety reasons. (Def. Aff. ¶ 10.) During the search of the passenger compartment of the vehicle, Defendant initially located loaded magazines. (*Id.* ¶ 11.) Plaintiff's account of these events indicates that he told Defendant the gun was in the trunk. (Pl. Aff. ¶ 8.) Although Defendant believed that the trunk could be accessed through the backseat, "the permissible scope of a protective search does not extend to a search of a vehicle's trunk." *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 839 (D. Md. 2012); *see also United States v. Lewis*, No. 3:09-CR-93-FDW-DCK, 2010 WL 2629754 at *5 n. 4 (W.D.N.C. June 25, 2010) *aff'd*, 466 F. App'x 170 (4th Cir. 2012) (although not directly before the Court for review, the Court "recognizes a protective search does not justify the search of a vehicle's trunk."). At the time of the search, Defendant was aware of the report to UNC campus police that there was a man on

---

[1] A brief investigatory stop may be conducted "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry*, 392 U.S. at 30. To the extent Plaintiff asserts that he was initially detained for an unreasonable amount of time, Plaintiff's argument is not convincing. The brief stop was not "prolonged beyond the time reasonably required to complete [the] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *see also Muehler v. Mena*, 544 U.S. 93, 100 (2005) ("2– to 3–hour detention in handcuffs [did] not outweigh the government's continuing safety interests.")

[2] *See* CAD Report, Ex. B, Docket Entry 46-2.

Franklin Street with a gun and was told by Plaintiff that the gun was in the trunk. Defendant located only magazine clips in the backseat of the vehicle. Under the circumstances in this case, entry into the trunk for a protective search was unlawful.

Defendant further argues that he could enter the trunk of the vehicle without a warrant since the vehicle contained evidence of the crime. "Under this exception, '[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.'" *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (*per curiam*). "The scope of the search [is] no greater than a magistrate could have authorized by issuing a warrant based on the probable cause that justified the search." *United States v. Ross*, 456 U.S. 798, 818 (1982). Examining the totality of the circumstances at the time of the incident, there is a genuine issue as to whether probable cause existed for Defendant to search the trunk. Although Plaintiff admitted he had a gun,[3] the determination of his consumption of alcohol is also critical here. Standing alone, possession of the weapon was not a violation; rather, Plaintiff's consumption of alcohol while in possession of the gun is the issue. Because there is a genuine issue of material fact as to the consumption of alcohol

---

[3] Plaintiff was charged pursuant to N.C. Gen. Stat. § 14-415.21(B); the Court finds no issue regarding the possession of a concealed handgun. Whether by actual or constructive possession, it is clear that Plaintiff possessed the gun in his vehicle. *See United States v. Armstrong*, 187 F.3d 392, 396 (4th Cir. 1999) ("A person has constructive possession over contraband when he has . . . control over the . . . vehicle in which it is concealed."); *United States v. Hall*, 514 F. App'x 352, 355 (4th Cir. 2013) *cert. denied*, No. 13-5355, 2013 WL 3761159 (U.S. Oct. 7, 2013) (constructive possession of guns in the trunk of the vehicle).

12

element, this Court recommends denial of the portion of Defendant's summary judgment motion addressing the automobile exception to the warrant rule.

3. Qualified Immunity

Absent an actual finding of probable cause, Defendant argues that he is nevertheless entitled to qualified immunity. The Court must consider two questions when ruling on qualified immunity: "(1) whether a constitutional or statutory right would have been violated on the facts alleged by the plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation." *Anderson v. Caldwell Cnty. Sheriff's Office*, 524 F. App'x 854, 860 (4th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). The Supreme Court notes that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Moreover, the Fourth Circuit in *Gomez v. Atkins* states that "qualified immunity protects law officers from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992)). The burden of proof and persuasion lies with the defendant official under a claim of qualified immunity.[4] *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

---

[4] "Qualified immunity is typically an immunity from suit, rather than a mere defense to liability, and is effectively lost if a case is permitted to go to trial. Nevertheless, . . . if a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury." *Gregg v. Ham*, 678 F.3d 333, 339 (4th Cir. 2012) (internal quotations omitted).

"When a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that probable cause existed to support the application." *Anderson*, 524 F. App'x at 860 (citation omitted). As such, the "guiding principle is that 'only where a warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.'" *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) (quoting *Malley*, 475 U.S. at 344-45). In *Swick v. Wilde*, the Court further stated:

> Moreover, '[t]he validity of [a] warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.' *Garrison*, 480 U.S. at 85. As a result, if an officer 'deliberately or with a 'reckless disregard for the truth' ma[kes] material[ly] false statements in his affidavit [in support of a warrant] . . . or omit[s] from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading,' 'an arrest based on the warrant is unreasonable. *Miller*, 475 F .3d at 627. Similarly, officers have no immunity based on a magistrate's warrant where "a reasonably well-trained officer in [the same] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant.' *Malley*, 475 U.S. at 345. Thus, the initial question for the court is whether [Plaintiff] has presented sufficient facts that, if believed, so differ from the account [Defendant] presented to the magistrate that a jury could reasonably find that [Defendant] intentionally or recklessly mischaracterized or omitted material facts in his warrant application.

Case No.1:10-CV-303, 2012 WL 3780350 at *12 (M.D.N.C. Aug. 31, 2012) *appeal dismissed and remanded*, No. 12-2196, 2013 WL 3037515 (4th Cir. June 19, 2013).

Here, the differences in Plaintiff and Defendant's story, specifically as it relates to Plaintiff's consumption of alcohol, are material to the probable cause determination. Thus, whether a constitutional right has been violated is unclear at this time. If the jury finds Plaintiff's version of the events taking place on November 17, 2010 to be true, Defendant's actions may be considered objectively unreasonable as to both the search of the trunk of

14

Plaintiff's vehicle and also the subsequent arrest which would be based upon a mischaracterized warrant application. As to whether a clearly established right was present, "[a] reasonable officer would have found it clear that he was not at liberty to seek an arrest for [the crime charged] in the absence of probable cause." *Id.* at *15. Defendant is not entitled to qualified immunity as a matter of law at this time.

4. Plaintiff's State Law Claims

Plaintiff also asserts state law claims for false imprisonment and trespass. Defendant contends that Plaintiff's claims should be barred under the doctrine of public immunity. Under this doctrine, "a public official is [generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Schlossberg v. Goins*, 141 N.C. App. 436, 445, 540 S.E.2d 49, 56 (2000) (internal quotation omitted.) "Where a complaint offers no allegations from which corruption or malice might be inferred, the plaintiff has failed to show an essential [element] of his claim, and summary judgment is appropriate." *Campbell v. Anderson*, 156 N.C. App. 371, 377, 576 S.E.2d 726, 730 (2003). Thus, to survive summary judgment, Plaintiff must make "a *prima facie* showing that the defendant-official's tortious conduct falls within one of the immunity exceptions[.]" *Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 205, 468 S.E.2d 846, 852 (1996) (citing *Locus v. Fayetteville State Univ.*, 102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991)).

Based upon the evidence viewed in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact as to whether Defendant acted with malice or corruption. Plaintiff alleges that "Defendant Greenlee without justification,

authority, or lawful excuse[,] interfered with the Plaintiff's possession of his pistol and trespassed upon his personal property by unlawfully seizing his pistol." (Compl. ¶ 87.) He further alleges that he was unlawfully detained and falsely imprisoned without justification. (*Id.* ¶¶ 78-82.) Even if a jury determines that probable cause was lacking as to the search of the vehicle and subsequent arrest, it still remains that "[t]he record is devoid of any evidence showing maliciousness or corruption by [Defendant]." *Campbell*, 156 N.C. App. at 377, 576 S.E.2d at 730; *cf. Goodman v. Barber*, No. 7:11-CV-00153-F, 2012 WL 4928873 at *9 (E.D.N.C. Oct. 16, 2012) *aff'd*, No. 12-2333, 2013 WL 4532171 (4th Cir. Aug. 28, 2013) (defendant not entitled to public official immunity for assault and battery claims where plaintiff alleges serious bodily injury). Here, the Court concludes that Defendant's conduct raises questions of objective reasonableness, but malicious or corrupt conduct is not present. Therefore, Defendant should be entitled to summary judgment as a matter of law as to Plaintiff's state tort claims under the public immunity doctrine.

5. Allegations of Retaliation

The Court's conclusion has no relevance to Plaintiff's contention of retaliation. In his amended Complaint Plaintiff does not assert a separate claim for retaliation, but he contends that Defendant's actions were retaliatory in nature. (Compl. ¶¶ 58-66.) However, Plaintiff by his own words appears to contradict such assertions by stating that "[f]urthermore[,] Plaintiff's claims against Defendant are not based on whether Defendant's actions were retaliation against Plaintiff. Plaintiff's fundamental claim is that Defendant did not have probable cause, or other legal justification, for his actions regarding Plaintiff that are the basis of this action." (Pl.'s Objections to Def.'s

16

Mot. for Order Allowing Release of Police Reports and Pl.'s Personnel Files at 5, Docket Entry 23) (emphasis in the original). Moreover, Plaintiff's factual allegations surrounding retaliation could not apply to events that occurred on November 17, 2007, because Defendant had no previous knowledge of Plaintiff's prior work history with the Chapel Hill Police Department. (Def. Aff. ¶ 20, Docket Entry 46.) In fact, Plaintiff states in his amended Complaint that Defendant did not know him before November 17, 2007. (Compl. ¶ 59.) After the incident, Defendant was only informed of past incidents involving Plaintiff and his gun, and that Plaintiff had previously been employed with the police department. (Def. Aff. ¶ 16.)

> Plaintiff alleges:
>
> Upon *information and belief*, Plaintiff was recognized by someone at the Chapel Hill Police Department when Plaintiff retrieved his pistol on November 19, 2007, or someone at the Chapel Hill Police Department heard about Defendant Greenlee's detention of Plaintiff on November 17, 2007, and this person or persons told Defendant Greenlee about Plaintiff's time as an employee of the Chapel Hill Police Department.

(Compl. ¶ 62) (emphasis added). A review of the record indicates that Defendant's later decision to seek an arrest warrant had no connection to Plaintiff's employment disputes that occurred years before the date of the incident and before Defendant Greenlee joined the Chapel Hill Police Department. Thus, Plaintiff has shown no evidence of retaliatory conduct on the part of Defendant.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that there is a genuine issue of material fact as to probable cause and that Defendant is not entitled to summary judgment as a matter of law based upon qualified immunity as to Plaintiff's Fourth Amendment unlawful search and seizure claims. However, Defendant is entitled to protection under the public immunity doctrine as to Plaintiff's remaining state tort claims. Therefore, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 45) be **GRANTED IN PART** as to Plaintiff's state tort claims for false imprisonment and trespass (third and fourth claims for relief), and **DENIED IN PART** as to Plaintiff's Fourth Amendment unlawful search and seizure claims (first and second claims for relief).

Joe L. Webster
United States Magistrate Judge

December 3, 2013
Durham, North Carolina